**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| ERIC SCOTT MCCAULEY, )<br>)<br>    Movant, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>    Respondent. ) | No. 2:14-cv-04282-NKL |

**ORDER**

Before the Court is Eric Scott McCauley's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, [Doc. 1]. For the reasons set forth below, the Motion is denied.

**I.    Background[1]**

On April 3, 2009, a federal grand jury in the Western District of Missouri returned a fifth superseding indictment in Case No. 07-cr-04009-01-NKL, charging McCauley and two co-defendants with a variety of narcotics and money laundering offenses. McCauley was charged with conspiracy to distribute and possess with intent to distribute 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Counts Two and Twenty-Nine); monetary transaction in criminally derived property, in violation of 18 U.S.C. § 1957 (Counts Three through Five); money laundering, in violation of 18 U.S.C. § 1956(a) (Counts Seven through Twenty-Seven); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Twenty-

---

[1] The following facts are taken almost verbatim from the United States' brief. In his reply in support of his § 2255 Motion, McCauley did not specifically dispute these background statements, and the Court finds them to be consistent with the record.

1

Eight); and distribution of marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count Thirty). [Crim. Doc. 130].[2]

On October 30, 2009, J.R. Hobbs was appointed to represent McCauley. [Crim Doc. 183]. Both of McCauley's co-defendants pleaded guilty, and on March 14, 2011, McCauley alone proceeded to trial. After two days of testimony and evidence, the case was submitted to the jury on March 16, 2011. McCauley was found guilty on all counts, with the exception of Count One, for which he was found guilty of a lesser-included charge of conspiracy to distribute over 100 kilograms of marijuana rather than the more than 1,000 kilograms of marijuana charged. [Crim. Doc. 277].

McCauley's presentence investigation report (PSR) was completed by the United States Probation Office. The PSR calculated a total offense level of 43 with a criminal history category of III, which resulted in a Guidelines range of life imprisonment, or the statutory maximum of 570 years. [Crim. Doc. 316, ¶¶ 119-20]. Through his attorney, McCauley objected to the base offense level of 34, to an enhancement under § 3B1.1(a) for his leadership role in the offense, to the PSR's failure to recommend a reduction for acceptance of responsibility, and to the criminal history category. [Crim. Doc. 316].

At sentencing on January 19, 2012, the Court overruled McCauley's objections except as to the drug quantities attributable to him. The Court found a base offense level of 32 (two levels below the 34 recommended by the PSR) based on a finding by a preponderance of the evidence that McCauley was responsible for more than 1,000 kilograms but less than 3,000 kilograms of marijuana. The total offense level was a 41 with a criminal history category of III, which placed McCauley's Guidelines range at 360 months to life imprisonment. After hearing argument by

---

[2] "Crim. Doc." refers to the docket from the underlying criminal proceedings against McCauley, Case No. 2:07-cr-04009-01-NKL. "Doc." refers to the docket from this civil case, Case No. 2:14-cv-04282-NKL.

2

both sides, the Court sentenced McCauley to a total of 276 months' imprisonment, comprised of 276 months on each of Counts One and Two, 120 months on each of Counts Three, Four and Five, 240 months on each of Counts Seven through Twenty-Eight, and 60 months on Counts Twenty-Nine and Thirty, all to run concurrently. The court imposed an additional 60-month sentence on Count Thirty, to run consecutively to Count Thirty only, for a total of 120 months on that count. [Crim. Doc. 332]; *see also* [Crim. Doc. 336] *and* [Crim. Doc. 347].

The Court's written judgment was imposed on January 19, 2012, and was entered on January 24, 2012. [Crim. Doc. 332]. After the Eighth Circuit upheld McCauley's judgment and sentence, McCauley filed this Motion pursuant to 28 U.S.C. § 2255, alleging three grounds of ineffective assistance of counsel and two grounds based on violations of the Fifth and Sixth Amendments to the United States Constitution. The Government concedes that the Motion was timely filed.

**II.   Discussion**

    **A.  Evidentiary Hearing**

McCauley requests an evidentiary hearing "to determine whether the arguments advanced [by him] warrant relief." [Doc. 1, p. 7]. An evidentiary hearing on a 28 U.S.C. § 2255 motion is necessary unless the motion, files, and records of the case conclusively show that the movant is not entitled to relief. *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008). A claim under § 2255 may be summarily dismissed without an evidentiary hearing if it is insufficient on its face or the record affirmatively refutes the factual allegations contained in the motion. *Id.* Accordingly, an evidentiary hearing is not required if the allegations in the motion "are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995). The Court has reviewed the

motion, files, and record and concludes that all of McCauley's claims can be fully and fairly evaluated without an evidentiary hearing.

### B. Ineffective Assistance of Counsel

Grounds One, Three, and Four of McCauley's Motion argue that his attorney, Mr. Hobbs, failed to provide effective assistance of counsel when he (1) failed to make a full inquiry into the prejudicial impact of a prospective juror's comments about his personal knowledge of the case, (2) failed to object to an improper grouping of the counts and to the misapplication of drug-related enhancements to money laundering guidelines, and (3) failed to object to an enhancement of his sentence pursuant to 18 U.S.C. § 3147.

To succeed on a claim of ineffective assistance, a movant must prove both: (1) that defense counsel's representation was deficient; and (2) that the deficient performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *U.S. v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Failure to prove "either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. To establish deficient performance, the movant must show that "the lawyer's performance was outside the range of professionally competent assistance." *Cox v. Norris*, 133 F.3d 565, 573 (8th Cir. 1997). On this issue, "[j]udicial scrutiny of counsel's performance must be highly deferential" and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, the movant "must show that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different." *Cox*, 133 F.3d at 573.

### 1. Failure to Inquire Into Impact of Prospective Juror's Comments

4

Case 2:14-cv-04282-NKL   Document 13   Filed 04/21/15   Page 4 of 18

During jury selection, a member of the venire, Mr. McCollum, reported to the Court (outside of the presence of other jurors) that he was acquainted with the people who lived in McCauley's neighborhood and that those acquaintances had spoken with Mr. McCollum about police activity at McCauley's residence. Later, another prospective juror, Ms. Boone, reported to the Court that during a lunch break, Mr. McCollum shared this information with her and two other prospective jurors, Ms. Robb and Ms. Otte. Ms. Otte was ultimately selected as a juror.

McCauley argues that Mr. Hobbs only engaged in "the most minimal questioning of . . . Otte." [Doc. 1, p. 4]. However, the transcript reveals that the Court and Mr. Hobbs repeatedly asked Ms. Otte about whether the information about police activity at McCauley's house would affect her ability to remain impartial, and Ms. Otte repeatedly denied bias:

> **THE COURT:** I appreciate you bringing it to our attention. I guess one of the questions I need to ask --
> **PROSPECTIVE JUROR OTTE:** No, ma'am, it would not make any difference whatsoever.
> **THE COURT:** All right. You realize that sometimes people -- yeah, exactly. They want to talk like they really know something or they've got some inside perspective, but they're just big talkers, and it has nothing to do with it.
> **PROSPECTIVE JUROR OTTE:** Right. See it every day.
> . . .
> **MR. HOBBS:** Yes, Judge. Miss Otte, first, thank you very much for your disclosure. Do you think by getting that information that somehow you've already started to form impressions about the case?
> **PROSPECTIVE JUROR OTTE:** No.
> **MR. HOBBS:** Was it the type of information that you accepted as true?
> **PROSPECTIVE JUROR OTTE:** No.
> **MR. HOBBS:** And, again, I'm not asking you to tell us anything other than your candid thoughts about it.
> **PROSPECTIVE JUROR OTTE:** I know.
> **MR. HOBBS:** But this is our time to ask you. Do you think that because an offhand comment was made that somehow it would be difficult for you to start this case with a truly open mind?
> **PROSPECTIVE JUROR OTTE:** Not at all.

5

> **MR. HOBBS:** Would you hold that in any way as evidence in this case–
> **PROSPECTIVE JUROR OTTE:** No.
> **MR. HOBBS:** -- before the trial started?
> **PROSPECTIVE JUROR OTTE:** No.

[Crim. Doc. 356, pp. 89-90]. Mr. Hobbs' decision not to inquire further of Ms. Otte after asking her four times about the effect of the general information on her impartiality was not performance "outside the range of professionally competent assistance," and therefore, McCauley has not demonstrated deficient performance as required by *Strickland*.

McCauley also argues Mr. Hobbs should not have relied on Mr. McCollum's statement that no other potential jurors, aside from Ms. Boone, Ms. Otte, and Ms. Robb, overheard the conversation and should have requested to interview other jurors. However, Ms. Boone, who reported the conduct, also independently confirmed that the conversation was limited to Ms. Boone, Ms. Otte, and Ms. Robb. *Id.* at pp. 86-87. Mr. Hobbs' reliance on statements from two prospective jurors, one of whom was forthcoming with the conduct and sought to follow the Court's rules, was not outside a "wide range of reasonable professional assistance," particularly in light of the fact that no statements were made to suggest that any other potential juror heard the conversation. Mr. Hobbs' performance during voir dire in response to Mr. McCollum's conduct was not deficient, and therefore, McCauley has not demonstrated ineffective assistance.

### 2. Failure to Object to Improper Grouping of Counts and Misapplication of Chapter Three Drug Enhancements to Money Laundering Guidelines

McCauley next argues that he received ineffective assistance of counsel because Mr. Hobbs failed to object to the manner in which the PSR grouped his drug convictions and his money laundering convictions. McCauley argues his drug convictions and money laundering convictions were grouped into "two distinct groups" and instead, should have been grouped

6

together "since the drug-related convictions were 'the underlying offenses' from which the laundered funds were derived." [Doc. 1, p. 5].

Section 2S1.1, note 6 of the Sentencing Guidelines states that "[i]n a case in which the defendant is convicted of a count of laundering funds and a count for the underlying offense from which the laundered funds were derived, the counts shall be grouped pursuant to" § 3D1.2(c). Applying § 3D1.2(c) to this case results in a single group of closely related counts comprised of the drug counts and the money laundering counts stemming from McCauley's drug-related conduct. Note 1 of § 3D1.4 states that in such a case, "the combined offense level is the level corresponding to the Group determined in accordance with § 3D1.3." Section 3D1.3(a) states that "for counts grouped together pursuant to [§ 3D1.2(c)], the offense level applicable to a Group is the offense level, determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group, i.e., the highest offense level of the counts in the Group."

Contrary to McCauley's argument, it is clear that the PSR and the Court properly grouped the money laundering and drug conviction counts into a single group pursuant to § 3D1.2(c). The PSR acknowledged that "all of the counts of conviction involve trafficking in illegal substances and the proceeds from the trafficking." [Crim. Doc. 316, p. 21, ¶ 79]. The PSR then "separated" the drug counts from the money laundering counts not because it considered the counts as different groups, but because § 3D1.3(a) states that the offense level for a group of counts is the highest offense level of the counts in the group. Following § 3D1.3(a), the Guidelines calculation for the money laundering counts (Counts Three through Five and Seven through Twenty-Eight) produced the highest offense level of the counts in the group. The base offense level for the money laundering counts is calculated by applying §2S1.1, which states that

7

Case 2:14-cv-04282-NKL   Document 13   Filed 04/21/15   Page 7 of 18

the base offense level for money laundering convictions is "[t]he offense level for the underlying offense from which the laundered funds were derived . . . ." The base offense level for the drug counts – the underlying offenses from which the laundered funds were derived – was 32 based on the Court's finding by a preponderance of the evidence that McCauley was responsible for more than 1,000 kilograms but less than 3,000 kilograms of marijuana. *See* § 2D1.1(c)(4). The base offense level was then increased by two levels under the money laundering Guidelines pursuant to § 2S1.1(b)(2)(B) because McCauley was convicted of money laundering under 18 U.S.C. § 1956. The base offense level was also increased by seven more levels for Chapter 3 enhancements (four levels for a leadership role pursuant to § 3B1.1(a) and three levels pursuant to § 3C1.3 for committing an offense while on pretrial release), for a total offense level of 41. For a defendant with a total offense level of 41 and a criminal history of III, the Guidelines range is 360 months to life, which is what the Court calculated at McCauley's sentencing hearing before ultimately sentencing him to a much lower sentence of 276 months. [Crim. Doc. 347, p. 21]. Because McCauley's money laundering and drug counts were properly grouped together and calculated, Mr. Hobbs' representation was not ineffective for failing to object to the calculation based on how the counts were grouped.

McCauley also argues the Court erred by considering his role in the underlying drug conspiracy when applying Chapter 3 enhancements to the money laundering Guidelines calculation and that Mr. Hobbs was ineffective for not raising the issue at sentencing. Note 2(c) of § 2S1.1 – related to the calculation of guidelines for money laundering – states that "application of any Chapter Three adjustment shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived." The Eleventh Circuit recently applied

this rule to a defendant with convictions similar to McCauley's and concluded that "[w]hen the district court calculated [the defendant's] offense level under § 2S1.1(a)(1) [as was the case with McCauley], it could base a role enhancement on his conduct in the money laundering conspiracy but not on his conduct in the underlying drug conspiracy." *U.S. v. Salgado*, 745 F.3d 1135, 1138 (11th Cir. 2014). The Eleventh Circuit explained:

> Section 1B1.5(c) of the guidelines provides that: "If the offense level is determined by a reference to another guideline under subsection (a) or (b)(1) above, the adjustments in Chapter Three (Adjustments) also are determined in respect to the referenced offense guideline, except as otherwise expressly provided." U.S.S.G. § 1B1.5(c). That provision means that where a guideline determines a defendant's offense level by reference to another offense, the Chapter Three adjustments are to be based on the guideline and rules for that other offense. The provision is, however, only a default rule, as the last five words of it indicate: "except as otherwise expressly provided." Application Note 2(C) of § 2S1.1 is one of those "otherwise expressly provided" situations. It instructs us that when setting an offense level under § 2S1.1(a)(1), a court should make Chapter Three adjustments based on the defendant's conduct in the money laundering offense itself, not based on his conduct in the offense from which the money that was laundered was obtained . . . .

*Id.* The Eleventh Circuit stated its conclusion was consistent with decisions from the First, Second, Sixth, Seventh, and Tenth Circuits and went on to summarize decisions from those circuits. *Id.* at 1138-39; *see also United States v. Cruzado-Laureano*, 440 F.3d 44, 49 (1st Cir. 2006); *United States v. Byors*, 586 F.3d 222, 226-28 (2d Cir. 2009); *United States v. Anderson*, 526 F.3d 319, 328 (6th Cir. 2008); *United States v. Rushton*, 738 F.3d 854, 858, 859 (7th Cir. 2013); *United States v. Keck*, 643 F.3d 789, 800-01 (10th Cir. 2011).

While the PSR, and ultimately, this Court applied Chapter Three sentence enhancements related to McCauley's role in the drug-related conduct to the money laundering calculation, [Crim. Doc. 316], McCauley suffered no prejudice from the effect of this misapplication. This is

9

because, as *Salgado* explains, Note 2 of § 3D1.3(a) "requires courts to use 'the highest offense level of the counts in the group' after factoring in the Chapter Two and Three adjustments for each of those counts." *Salgado*, 745 F.3d at 1139. Even if the Chapter 3 enhancements cannot be added to the base offense level under the money laundering guidelines, they can be added to the base offense level under the drug offense guidelines, which would then make the drug offenses the "highest offense level of the counts in the group." Basing a Guidelines calculation on McCauley's drug offenses rather than his money laundering offenses would result in a total offense level of 39. This is based on a base offense level of 32 under § 2D1.1(c)(4) for 1,000 to 3,000 kilograms of marijuana, a four level increase for his leadership role pursuant to § 3B1.1, and a three level increase pursuant to 18 U.S.C. § 3147 and U.S.S.G. § 3C1.3 for committing an offense while on pretrial release. The two level difference (from 41 to 39) results in the same calculation used under the money laundering offenses but without the two level increase pursuant to § 2S1.1(b)(2)(B) for a conviction of money laundering under 18 U.S.C. § 1956. With an offense level two levels lower and a criminal history score of III, McCauley's Guidelines range would be 324-405 months, which is still substantially higher than the 276 month he actually received. Because McCauley received a sentence substantially lower than what his sentence would be even under the method of applying Chapter 3 enhancements suggested by him, McCauley suffered no prejudice, and therefore, cannot establish that Mr. Hobbs' representation was ineffective.

### 3. Failure to Object to Enhancement Pursuant to 18 U.S.C. § 3147

McCauley also contends Mr. Hobbs provided ineffective assistance because he failed to object to a Chapter 3 enhancement pursuant to 18 U.S.C. § 3147. Section 3C1.3 of the Guidelines states that if a statutory enhancement under 18 U.S.C. § 3147 applies, the offense

level should be increased by 3 levels. A statutory enhancement under 18 U.S.C. § 3147 applies if a person is convicted of an offense committed while on pretrial release. McCauley argues the three level enhancement under § 3147 should not have been applied to the Guidelines calculation of his total offense level because while he was convicted of Count 30 for distribution of marijuana, "the predicate facts [related to § 3147] were neither charged in his indictment nor found by his jury." [Doc. 1, p. 6]. Presumably, McCauley is arguing that while the jury found him guilty of Count 30, they did not specifically find him guilty of committing the acts in Count 30 *while on pretrial release*.

McCauley argues the application of an 18 U.S.C. § 3147 enhancement without a specific jury finding "runs counter to *Apprendi*." In *Apprendi v. New Jersey*, the Supreme Court of the United States held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. 466, 490 (2000).

Neither the Supreme Court nor the Eighth Circuit has expressly decided whether an *Apprendi* violation occurs where the factual basis for a § 3147 enhancement is omitted from the indictment or where the factual basis for an enhancement is not presented to a jury for determination of guilt. *See U.S. v. Gillon*, 348 F.3d 755, 757-58 (8th Cir. 2003) ("assum[ing] without deciding that under current [post-*Apprendi*] law it was error to omit the factual basis for the [§ 3147] enhancement from the indictment"). However, other circuits have held that the failure to have a jury determine if the defendant was on release at the time he committed the underlying crime – the crux of a § 3147 enhancement – was not an *Apprendi* violation where the defendant did not face a risk of a sentence which exceeded the statutory maximum for the underlying crime. *See United States v. Lewis*, 660 F.3d 189, 194-95 (3d Cir. 2011) (holding that

11

district court did not err in applying § 3147 enhancement where jury found the elements of § 3147 had been proven beyond a reasonable doubt and discussing the consistency of its ruling with *United States v. Samuel*, 296 F.3d 1169 (D.C. Cir. 2002), *United States v. Randall*, 287 F.3d 27 (1st Cir. 2002), and *United States v. Confredo*, 528 F.3d 143 (2d Cir. 2008)). Regardless, this Court need not address whether Mr. Hobbs' failure to object to the three level enhancement under § 3C1.3 and 18 U.S.C. § 3147 was outside the "wide range of professional assistance" because even if it was, McCauley cannot show prejudice. This is because removal of the three level enhancement under § 3C1.3 from the Court's Guidelines calculation altogether still yields a total offense level with a Guidelines range above or within McCauley's actual sentence. For example, even assuming that the Court's total offense level should have been 39 instead of 41 as discussed in Part II.B.2 of this Order regarding use of the drug offenses as the highest offense level of the counts in the group, removing the 3 level enhancement under § 3C1.3 would result in a total offense level of 36. The Guidelines range for defendant with a total offense level of 36 and a criminal history of III is 235-293 months. McCauley's sentence of 276 months falls within that range.[3]

McCauley argues that the application of the § 3147 enhancement without a jury finding was an *Apprendi* violation because it elevated the statutory maximum penalty for the underlying crime he committed while on release. McCauley was found guilty of Count 30 for distribution of marijuana. The statutory maximum for that offense is five years. The Court sentenced McCauley on Count Thirty to the statutory maximum of five years. To satisfy § 3147, the Court sentenced McCauley to an additional five years to run consecutively with Count Thirty, for a total sentence on Count Thirty of 120 months. While the additional five year sentence on Count

---

[3] This conclusion is supported by McCauley's own argument in his reply brief that the appropriate total offense level would have been 36 with a criminal history category of III and a sentencing range of 235-293 months. [Doc. 12, p. 2].

Thirty pursuant to § 3147 did elevate the sentence on Count 30 to a term above the statutory maximum for the underlying crime, there is no prejudice. This is because the Court made clear that the additional five year sentence pursuant to § 3147 ran consecutively to Count Thirty only and that the total 120 month sentence under Count 30 ran concurrently with the sentences imposed on the other counts, including the 276 month sentences applied to each of Counts One and Two. *See* [Crim. Doc. 347, p. 42, ¶¶ 7-20]. So even removing the additional five year sentence imposed on Count Thirty pursuant to § 3147, McCauley would still be required to serve 276 months' imprisonment under each of Counts One and Two. Further still, McCauley concedes that even if the Court could not impose a five year consecutive sentence under § 3147 without a jury finding under *Apprendi*, *Apprendi* does not prohibit the Court from considering his conduct on pretrial release when determining a sentence under the Guidelines within the statutory range imposed by the jury's findings. [Doc. 12, p. 4].

McCauley also argues that the Court applied the § 3147 enhancement in two different steps, resulting in "double counting." McCauley contends that the Court added a three point enhancement under § 3C1.3 to his money laundering counts and then applied a five-year consecutive sentence to Count Thirty to satisfy the requirements of § 3147. The Court did apply a three level enhancement under § 3C1.3, but the Court did not "double count." Rather, McCauley misunderstands the Court's explanation of its effort to apply the enhancement as required by § 3147 while also choosing to vary significantly downward to maintain consistency among similarly situated offenders. After recalling similarly situated offenders, the Court stated:

> One of the things that stands out about this case is that the defendant was arrested, he fled, and he continued to deal drugs, even after he was caught. That's a significant factor to me. What's that alone worth? What would be an appropriate punishment for that conduct, separate from everything else?

13

[Crim. Doc. 347, p. 34]. After hearing argument and sentencing McCauley to a total of 276 months, the Court explained:

> What I did was I kind of looked at, I looked at Rodebaugh who I think is very analogous in terms of, not in terms of the precision of the sentencing guidelines, but very analogous in terms of the damage to society and the attitudes and, you know, the persistence of the criminal behavior. . . . The reason that he's given essentially three years more than Rodebaugh is because of his conduct while he was out on release. So I looked at what three years would be and that's about what the difference of the three-year bump was is that three-point enhancement that he got as a result of his conduct. And so I added that to the Rodebaugh sentence to keep them comparable, but taking into account that additional factor.

*Id.* at 46-47. McCauley interprets this statement by the Court as "double counting," but it is actually the Court's explanation of how the three-point enhancement under § 3C1.3 results in a lengthier sentence than given to Rodebaugh due to McCauley's conduct on pretrial release. And while a five year consecutive sentence was applied to Count Thirty, no "double counting" occurred because, as discussed above, the Court clarified that the five year sentence ran consecutive to Count Thirty only, and Count Thirty's 120 month total sentence ran concurrently with the 276 month sentences applied to Counts One and Two. Regardless of the intricacies of the Sentencing Guidelines, the Court imposed a 276 month sentence to be consistent with a sentence imposed in a similar case, but taking into account McCauley's persistent criminal attitude.

McCauley has not demonstrated that Mr. Hobbs provided ineffective assistance of counsel by failing to further question potential jurors regarding statements by potential juror Mr. McCollum, by failing to object to the grouping of the counts or the application of enhancements to his money laundering counts, or by failing to object to an enhancement pursuant to § 3147. "Judicial scrutiny of counsel's performance must be highly deferential" and McCauley has not

14

overcome the "strong presumption that [Mr. Hobbs'] conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

### C. Fifth and Sixth Amendment Violations

Grounds Two and Five of McCauley's Motion argue he was deprived of his Fifth and Sixth Amendment rights to due process and a jury trial when the Court sentenced him for an aggravated crime that was not in the jury's verdict and used unconvicted conduct in his sentence.

First, McCauley argues that in light of *Alleyne v. United States*, 133 S.Ct. 2151 (2013), his sentence violates his Fifth and Sixth Amendment rights because he was sentenced to a mandatory minimum of not less than 10 years – corresponding with a drug quantity finding by the Court of more than 1,000 kilograms but less than 3,000 kilograms of marijuana – rather than a mandatory minimum of not less than 5 years – corresponding with the jury's finding that he was responsible for more than 100 kilograms but less than 1,000 kilograms of marijuana. In *Alleyne*, the Supreme Court of the United States held that "[m]andatory minimum sentences increase the penalty for a crime" and that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne*, 133 S.Ct. at 2155.

On Count One, the jury found McCauley responsible for more than 100 kilograms but less than 1,000 kilograms of marijuana. As the PSR states, the statutory range for this conviction is not less than five years and no more than forty years. At his sentencing, the United States presented evidence regarding drug quantities, and the Court made a factual finding under the Guidelines that by the preponderance of the evidence, McCauley was responsible for more than 1,000 kilograms but less than 3,000 kilograms of marijuana.

McCauley argues the Court used this finding to elevate his statutory minimum sentence from five years to ten years. In support of this argument, he points to the Addendum to the

15

Presentence Report which states that "the only effect and the only purpose of the jury's fact-finding regarding drug quantities is to determine the statutory maximum" and that "the Court can engage in traditional fact-finding at sentencing regarding the drug amount to determine the appropriate mandatory minimum . . . so long as the sentence remains capped by the statutory maximum of the jury's verdict." [Crim. Doc. 316, pp. 33-34]. This statement in the Addendum to the PSR, which occurred before the Supreme Court's 2014 decision in *Alleyne*, is clearly inconsistent with *Alleyne*'s holding that facts increasing not only the mandatory maximum but also the mandatory minimum must be submitted to the jury. However, contrary to McCauley's argument that he believes the Court elevated his minimum sentence based on its own findings, the Court did not conclude or in any way state that its factual findings under the Guidelines were also used to elevate the statutory minimum from five years to ten years. Rather, the Court only considered its own findings in determining a sentence within the statutory range of five to forty years, which was established by the jury's finding. The Court's factfinding is not inconsistent with *Alleyne* since the Court did not alter the statutory range found by the jury and instead, imposed a sentence within that range. As the Supreme Court stated in *Alleyne*, its holding "does not mean that any fact that influences judicial discretion must be found by a jury." *Id.* at 2163. A judge is permitted to "exercise discretion – taking into consideration various factors relating both to offense and offender – in imposing a judgment *within the range* prescribed by statute." *Id.* (quoting *Apprendi*, 530 U.S. at 481) (emphasis in original); *see also United States v. Gonzalez*, 765 F.3d 732, 738-39 (7th Cir. 2014) (acknowledging *Alleyne* and concluding that the district court did not err by finding a higher quantity of drugs than did the jury because "[a]s long as the court stays within the statutory sentencing minimum and maximum . . . it has discretion to

16

impose a sentence based on the precise drug quantity attributable to the defendants' conspiracy by a preponderance of the evidence.").

Second, McCauley contends that regardless of whether no new mandatory minimum was imposed by the Court's factual findings, the Court should not have considered any quantity of drugs other than the quantity found by the jury. This argument is inconsistent with *Alleyne*, where the Supreme Court "[took] care to note" that its holding did not bar a judge from judicial factfinding that aids a judge in exercising her discretion to select a sentence within the range authorized by law. *See Alleyne*, 133 S.Ct. at 2163. The argument is also inconsistent with holdings from courts that have applied *Alleyne*. *See i.e.*, *United States v. Thomas*, 760 F.3d 879, 889-90 (8th Cir. 2014); *Gonzalez*, 765 F.3d at 738-39; *United States v. Hinojosa*, 749 F.3d 407, 412-13 (5th Cir. 2014). McCauley points to the Eighth Circuit's opinion in *United States v. Lara-Ruiz*, 721 F.39 554 (8th Cir. 2013), where the Eighth Circuit concluded that based on *Alleyne*, the district court erred by applying an elevated mandatory minimum based on that court's finding that the defendant brandished a weapon, even when the district court stated that the defendant's sentence would be the same regardless of whether the mandatory minimum based on the jury's findings or the elevated mandatory minimum based on the court's findings applied. *Lara-Ruiz*, 721 F.3d at 558. However, this case is distinguishable from *Lara-Ruiz* because in that case, the sentencing court actually elevated the defendant's minimum sentence based on its findings, and in this case, this Court did not. Nothing in the record suggests that the Court concluded that McCauley was subject to a ten year mandatory minimum rather than a five year mandatory minimum.

Because the Court used its own judicial factfinding not to elevate the statutory range imposed by the jury's finding, but rather to sentence McCauley within that statutory range, the

17

Court did not commit error when finding that McCauley was responsible for more than 1,000 kilograms but less than 3,000 kilograms of marijuana. McCauley has not demonstrated ineffective assistance of counsel or any violation of his Fifth and Sixth Amendment rights, and therefore, McCauley has not established a reason why this Court should vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Therefore, McCauley's Motion is denied.

### D. Certificate of Appealability

The Court will issue a certificate of appealability only if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, McCauley has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability in this case.

### III. Conclusion

For the reasons set forth above, Eric Scott McCauley's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, [Doc. 1], is denied.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: April 21, 2015
Jefferson City, Missouri